**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

**IN RE**

**THOMAS CECIL DENNIS, III** **CASE NO. 26-20963**
**AMY M. DENNIS**

**DEBTORS**

**CHAPTER 7**

**MEMORANDUM OPINION AND ORDER DENYING MOTIONS FOR RULE 2004 EXAMINATION AND TO COMPEL ANSWERS**

This case came before the Court on the "Motion of Judgment Creditor Daniel Kenneth Woodie for an Order Authorizing Rule 2004 Examinations and Production of Documents" ("Rule 2004 Motion") and "Creditors' [*sic*] Motion to Compel Answers from Debtors Pursuant to 11 U.S.C. § 343, Motion for Sanctions, and Motion to Refer Matter to the United States Trustee for Perjury and Non-Compliance" ("Motion to Compel"). [ECF Nos. 25, 26 (the "Motions").] Pursuant to the Court's Scheduling Order [ECF No. 28], Debtors Thomas Cecil Dennis, III and Amy M. Dennis, through counsel, filed a Response opposing Creditor's *pro se* Motions and Creditor filed a Reply in support of his Motions. [ECF Nos. 30, 33.] The Court held a hearing on November 10, 2026, and took the Motions under advisement. For the reasons explained below, the Court will deny the Motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

On September 22, 2026, Debtors filed a chapter 7 petition. [ECF No. 1.] Prior to the petition date, Debtors and Creditor Daniel Woodie were involved in multiple suits, some of which remain pending as of the date of this Opinion.[1] As evidenced by the parties' pleadings,

---

[1] Two of these cases are identified in Debtors' petition: Kenton County (KY) Criminal Case No. 25-CR-542 and Kenton County (KY) Civil Case No. 25-CI-44. [ECF No. 1 at 50.] However, as Creditor points out, there are multiple other pending state court cases involving Creditor and Debtors. [ECF No. 25 at ¶¶ 2, 15-16.]

Creditor and Debtors have a complicated, acrimonious, and litigious relationship. Of particular note is Kenton County (KY) Family Court Case No. 24-D-395-001, which revolved around Creditor's involvement with Debtors' daughter/step-daughter and resulted in the issuance of an Interpersonal Protective Order ("IPO") against Creditor. [ECF No. 25 at ¶¶ 14-15.] The Kentucky Court of Appeals affirmed the Family Court's decision to issue this IPO. *Woodie v. Hull*, Nos. 2025-CA-0376-ME, 2025-CA-1049-ME, 2026 Ky. App. Unpub. LEXIS 249 (Ky. Ct. App. Apr. 17, 2026), *review denied*, 2026 Ky. LEXIS 88 (Ky. Aug. 12, 2026). In connection with the dismissal of one of these cases, Creditor was granted a judgment for $1,573 against Debtors and filed a lien on their real property located at 50 Crystal Lake Drive, Covington, KY 41017, which was identified in their Schedule D. [ECF No. 1 at 21.]

On October 26, 2026, Creditor filed the Rule 2004 Motion, in which he makes multiple allegations relating to Debtors' (a) honesty concerning the disclosure of their assets and the accuracy of their bankruptcy filings, (b) alleged fraudulent conduct, and (c) conduct relating to the aforementioned state court cases. [ECF No. 25.] Creditor requests that he be permitted to conduct Rule 2004 examinations of and seek voluminous records from Debtors and 48 other entities and individuals—including multiple governmental agencies and employees, Debtors' state court counsel, and members of Debtors' family—to investigate the allegations. [ECF No. 25-1 at 1-2, 5-20.] Perhaps most disturbingly, Creditor seeks permission to serve a Rule 2004 subpoena on Debtors' daughter/step-daughter even though, as he acknowledges, an IPO prohibits him from contacting her. [ECF No. 25 at ¶ 27.]

The next day, on October 27, 2026, the Chapter 7 Trustee held the § 341 meeting with Debtors, in which Creditor participated.[2] [ECF No. 27.] A few hours after it concluded, Creditor filed the Motion to Compel, which asserts that Debtors failed to properly answer questions

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

during the § 341 Meeting and that Debtor Amy Dennis perjured herself when stating her daughter is responsible for Storage Unit 3131 located at Fort Wright Public Storage (the "Storage Unit"). [ECF No. 26 at ¶¶ 3-10.] Based on these allegations, Creditor requests that Debtors be compelled to submit to a re-convened § 341 meeting, that sanctions be imposed on Debtors for their failure to answer truthfully and completely the questions asked of them at the § 341 meeting, and that the matter be referred to the United States Trustee ("UST") for further investigation. [*Id.* at ¶¶ 11-23.] In support, Creditor provided screenshots of emails related to the payment of the Storage Unit that identify Debtor Amy Dennis as the account holder. [ECF No. 26-1.]

The Court entered an Order scheduling a hearing, which also provided an opportunity for Debtors to file a Response to the Motions and for Creditor to file a Reply. [ECF No. 28.] Debtors' timely Response objected to the Motions on several grounds. They argue Creditor's Rule 2004 Motion blurs the lines between matters relevant to this bankruptcy proceeding and the state court cases in which the parties are enmeshed, that Creditor has failed to establish good cause to examine these multiple entities and to request these records, and that Creditor's right to examine Debtors does not extend to such a burdensome examination. [ECF No. 30 at ¶¶ 12-19.] Additionally, Debtors assert Creditor has failed to comply with the procedural requirements set out under Federal Rule of Bankruptcy Procedure 9011 to succeed on his Motion to Compel and that nothing in the record rises to the level of sanctionable conduct. [*Id.* at ¶¶ 24-28.]

Creditor filed a timely Reply to Debtors' Response. [ECF No. 33.] It reiterates many of the allegations in his Motions concerning Debtors' veracity and efforts to hide assets. It also states Creditor has communicated with the UST, has sent him documents relating to Debtors' alleged fraud and abuse of the bankruptcy process, and that the UST supported his Rule 2004 Motion. [*Id.* at ¶ 30.] Creditor attached 70 pages of exhibits to his Reply, including transcript

excerpts, a spreadsheet, email and text message screenshots, and a copy of his judgment lien. [ECF No. 33-1.] Finally, Creditor filed a new proposed order granting his Motions. [ECF No. 33-2.][3]

During the hearing on November 10, 2026, the UST appeared telephonically and clarified that while he had spoken with Creditor about this case and had received approximately 500 pages of documents from him, the UST did not take a position on the Motions. Creditor also confirmed that he had used artificial intelligence to help prepare the Motions. The Court heard arguments from Debtors and Creditor and took the matter under advisement.

## II. JURISDICTION.

The Court has jurisdiction over this matter. 28 U.S.C. § 1334(b). Venue is proper in this District. 28 U.S.C. § 1409. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

## III. ANALYSIS.

### A. Creditor's Rule 2004 Motion.

#### 1. Applicable Law.

Federal Rule of Bankruptcy Procedure 2004(a)-(b)(1) states:

> (a) In General. On a party in interest's motion, the court may order the examination of any entity.
> (b) Scope of the Examination.
> (1) In General. The examination of an entity under this Rule 2004, or of a debtor under § 343, may relate only to:
> (A) the debtor's acts, conduct, or property;
> (B) the debtor's liabilities and financial condition;
> (C) any matter that may affect the administration of the debtor's estate; or
> (D) the debtor's right to a discharge.

As one court in the Sixth Circuit has explained:

[3] In this order, Creditor requested relief not mentioned in the Motions: an extension of the deadline to file a complaint objecting to Debtors' chapter 7 discharge. [ECF No. 33-2 at ¶ 8.] Because this relief was not originally requested in the Motions and has not been briefed, it is not properly before the Court.

> It is well-established that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted. The scope of examination permitted pursuant to Rule 2004 is wider than that allowed under Federal Rules of Civil Procedure and can legitimately be in the nature of a "fishing expedition". Although the primary purpose of a Rule 2004 examination is to permit a party in interest to quickly ascertain the extent and location of the estate's assets, such examination is not limited to the debtor or his agents, but may properly extend to creditors and third parties who have had dealings with the debtor.

*In re DeShetler*, 453 B.R. 295, 302 (Bankr. S.D. Ohio 2011) (quoting *In re Fearn*, 96 B.R. 135, 137-38 (Bankr. S.D. Ohio 1989)). "Bankruptcy courts have broad discretion in determining whether to order a [Rule] 2004 examination." *Id.* at 301. However, while Rule 2004 is broad, it is not limitless and examinations under this Rule should not be permitted when they are more costly or disruptive to the examinee than they are beneficial to the examiner or when the movant seeks to abuse or harass the non-moving party. *Id.* at 302.

Therefore, when a party objects to a Rule 2004 motion, "the examiner must establish 'good cause,' taking into consideration the totality of the circumstances, including the importance of the information to the examiner and the costs and burdens on the creditor. . . . The level of good cause required to be established varies depending on the potential intrusiveness." *Id.* (citation modified). Other courts have followed this reasoning and held that a party seeking a Rule 2004 examination has the burden of proof to establish standing and good cause for the requested relief. *See*, *e.g.*, *In re SunEdison*, *Inc.*, 572 B.R. 482, 489 (Bankr. S.D.N.Y. 2017); *In re Moore Trucking, Inc.*, No. 2:20-BK-20136, 2020 WL 6948987, at *7 (Bankr. S.D. W. Va. July 14, 2020) ("The party moving for examination has the burden of showing good cause for the examination, and the grant or denial of such request lies 'within the sound discretion of the Bankruptcy Court.'"); *In re Orion Healthcorp, Inc.*, 596 B.R. 228, 235 (Bankr. E.D.N.Y. 2019) (stating the movant has the burden to establish good cause). "The party bearing the burden of proof may satisfy the burden by demonstrating that the discovery request is necessary to establish its claim in the bankruptcy case or that denial of the discovery request would cause

undue hardship or injustice to the examiner." *Moore Trucking*, 2020 WL 6948987 at *7. In other words, relevance alone is insufficient to justify a Rule 2004 examination and "the Court must 'balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination.'" *SunEdison*, 572 B.R. at 489-90.

Additionally, when related civil or criminal proceedings are taking place in another court, "[t]he general rule . . . is that the existence of, or potential for, collateral litigation is insufficient reason to deny examination." *In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000). "However, Rule 2004 examinations should not be designed to discover information for use in an unrelated case or proceeding" or, in other words, "while the scope of Rule 2004 is broad, the rule cannot be used to harass, abuse, or inquire into irrelevant matters, and examinations should not be overly disruptive or costly." *Id.* at 208-09.

**2. The Rule 2004 Motion Will be Denied.**

In this case, Creditor has not established good cause to subpoena and examine the multiple individuals and entities listed in his Rule 2004 Motion. Creditor has requested leave to not only subpoena and examine Debtors, but also 48 other individuals and entities that Creditor claims have relevant information for this bankruptcy case and seeks multiple categories of documents and information from these parties. [ECF No. 25-1 at 1-3, 5-20.] However, the Court's impression from the papers and the hearing is that Creditor's requests are primarily concerned with the aforementioned state court proceedings and his allegations relating to Debtors' fraudulent and illegal activity—none of which is relevant to Creditor's specific claim in this bankruptcy case and, even if so, should be investigated by the UST or Chapter 7 Trustee.

Most concerningly, Creditor requests permission to subpoena and examine Debtors' daughter/step-daughter, a non-debtor. [ECF No. 25 at ¶ 27.] For this request, Creditor essentially asks to override a state court order precluding contact between Creditor and the non-debtor

because he was found to have stalked and harassed her. He does so purportedly to ask her questions about unrelated events and issues, including, among other things, the aforementioned state court case that led to an IPO being issued against Creditor, her own assets and finances, and any transfers between her and Debtor Amy Dennis. [ECF No. 25-1 at 8-9.] The Court finds this request especially disturbing—and insightful concerning Creditor's motivations. The other requests appear similarly designed to harass the potential examinees—many of whom Creditor appears to feel aggrieved by—not to conduct appropriate discovery in a bankruptcy case. Thus, the Court finds that Creditor has not met his burden to establish good cause for these requests to the non-debtors and, in its discretion, does not authorize 2004 examinations of or subpoenas to these parties.

At least some of Creditor's intended requests for production to Debtors, however, deal with their financial assets and their bankruptcy estate. [ECF No. 25-1 at 5-8.] Creditor asks to request information from Debtors on a variety of topics, including real estate conveyances, undeclared debts, and assets Debtors may have sold or given away. [*Id*.] Yet, these requests also appear primarily concerned with Creditor's allegations relating to Debtors' veracity and good faith in this bankruptcy case.

Creditor is not the proper party to conduct such an examination. Rather, as one court has explained, "the UST is charged by statute with the duty to oversee and supervise the administration of bankruptcy cases. 28 U.S.C. § 586(a). Congress has summarized the role of the UST as protector of the public interest with the responsibility to ensure that bankruptcy cases are conducted in accordance with the law." *DeShetler*, 453 B.R. at 302. Another court explained the trustee's role in the context of a Rule 2004 motion as follows:

> In assessing the propriety of a request for a 2004 examination, its purpose as an investigatory device arising out of the needs of the trustee should be kept in mind, and where a proposed examination goes beyond that purpose it should be carefully scrutinized. Here, both motions, although couched in the rule's language

> of matters affecting the administration of the estate and investigating the conduct of the debtor, exceed those boundaries. ***Remember, these are chapter 7 cases and it is the trustee's the* [*sic*] *duty to investigate the debtor's affairs and the rights of the bankruptcy estate. To the extent the movants seek to discover avoidable transfers, they are intruding upon the trustee's duties and taking those duties upon themselves.*** While the court may understand their curiosity, there is nothing the movants could do with that information once they got it. They could not act upon it, or seek to recover any such transfers; the trustee has the exclusive right to do so. *Matter of Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) (If a third party tries to prosecute a cause of action belonging to the trustee, the action should be dismissed.). So, in that sense, their examination can serve no real purpose. ***While movants may genuinely want to help the trustee, should the trustee desire that assistance, they must do so directly, acting for, at the behest of, and in the name of the trustee, and not indirectly, in a manner that treats the trustee as simply an incidental beneficiary of an endeavor actually undertaken for someone else.*** *Cf. Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1231 (7th Cir. 1990) (trustee may accept help from creditors but creditors may not act in their own name to protect the interests of the estate).

*In re J & R Trucking, Inc.*, 431 B.R. 822 (Bankr. N.D. Ind. 2010) (emphasis added).

Creditor has acknowledged that he has contacted the UST about his views on Debtors' veracity and conduct and provided documents to the UST on these issues. [ECF No. 33 at ¶ 30.] The UST confirmed that this conversation had occurred and that the UST is reviewing the matter. The UST or the Chapter 7 Trustee can take investigative actions if deemed warranted. However, Creditor is not the proper party to do such an investigation and has otherwise failed to establish standing to request these documents or good cause to examine Debtors on these issues. Therefore, Creditor's Rule 2004 Motion will be denied in its entirety.

**B. Creditor's Motion to Compel.**

**1. Applicable Law.**

"A party seeking sanctions bears the ultimate burden of proof to show that sanctions are appropriate." *Bojicic v. DeWine*, 714 F. Supp. 3d 913, 918 (N.D. Ohio 2024), *aff'd*, 145 F.4th 668 (6th Cir. 2025). "Once a movant establishes a prima facie case, the burden of production shifts to the sanctions respondent to come forward with a reason why they should not be

sanctioned." *Id.* Additionally, pursuant to Bankruptcy Rule of Procedure 9011(c)(2)(B), "[t]he motion for sanctions must not be filed or presented to the court if the challenged document, claim, defense, contention, allegation, or denial is withdrawn or appropriately corrected within 21 days after the motion was served (or within another period as the court may order)."

Given Creditor's allegations, it is worth noting that "[s]tatements made by a debtor in his bankruptcy schedules, his personal statement of financial affairs, and at 341 meetings are all statements made under oath." *Jahn v. Hughes, (In re Hughes)*, 490 B.R. 784, 791 (Bankr. E.D. Tenn. 2013). Additionally, "the Bankruptcy Code contains a separate basis for denial of a discharge when a debtor knowingly and fraudulently makes false statements under oath in connection with his bankruptcy case." *Noland v. Johnson (In re Johnson)*, 387 B.R. 728, 743 (Bankr. S.D. Ohio 2008). However, the movant carries the burden of establishing by a preponderance of the evidence that, "1) the debtor made a statement while under oath; 2) the statement was false; 3) the statement related materially to the bankruptcy case; 4) the debtor knew the statement was false; and 5) the debtor made the statement with fraudulent intent." *Id.*

**2. Creditor's Motion to Compel Will be Denied.**

The Motion to Compel seeks to have Debtors submit to another § 341 meeting, sanction them for refusing to fully and honestly answer questions at the prior § 341 Meeting, and have the UST investigate Debtors' non-compliance and perjury. [ECF No. 26.] Creditor, however, has failed to meet his burden to justify such relief or to establish that his Motion to Compel is properly before the Court.

As indicated above, Creditor takes primary issue with Debtors' answers at the § 341 meeting and Debtor Amy Dennis' answers relating to the Storage Unit that may be owned and operated by Debtors and/or their daughter/step-daughter. [*Id.*] To begin with, however, Creditor's Motion to Compel must fail for failing to abide by the procedural requirements under

Rule 9011. Specifically, under Rule 9011(c)(2)(B), Creditor was to serve a copy of the Motion to Compel on Debtors and then give Debtors 21 days to address the alleged sanctionable conduct before filing it with the Court. Creditor did not do this and, in fact, gave Debtors no notice by filing the Motion to Compel mere hours after the § 341 Meeting occurred. Creditor's failure to abide by Rule 9011(c)(2)(B) means the Motion to Compel must fail on its face.

This sequence of events not only fails to comply with Rule 9011 but also implies that Creditor likely had prepared this Motion to Compel before the § 341 meeting had even taken place.[4] As such, this timing calls into serious question whether Creditor filed this Motion to Compel primarily to harass Debtors.

Further, Creditor's Motion to Compel fails on its merits. Creditor attached a transcript of the § 341 meeting as an exhibit to the Reply. [ECF No. 33-1 at 2-11.[5]] A review of Debtors' answers to Creditor's questions does not reveal any sanctionable conduct. In fact, the transcript merely shows what appears to be a routine § 341 meeting and does not establish anything that comes close to warranting sanctions against Debtors, to compel them to submit to another § 341 meeting, or for the Court to refer this matter to the UST. Simply put, Creditor has failed to meet his burden to establish that the requested relief should be granted. Therefore, due to procedural issues and on the merits, Creditor's Motion to Compel also will be denied.

## IV. CONCLUSION.

Based on the above, the Court finds that Creditor has failed to meet his burden to establish good cause for the requested Rule 2004 examinations, that Debtors should be required

---

[4] Another possible explanation for this quick turnaround is Creditor's admitted use of artificial intelligence. While the Court did not find any hallucinations or similar issues in Creditor's Motions, Creditor should be mindful of the potential errors that may occur with the use of artificial intelligence in the drafting of any future motions or pleadings. The Court will not tolerate pleadings that contain such errors.

[5] The transcripts submitted with Creditor's Reply were not certified by a court reporter. [ECF No.33-1 at 2-11, 55-67.] This calls into question their accuracy and admissibility. However, because Debtors did not object to their submission, the Court reviewed them and Creditor's other exhibits in reaching its decision.

to attend another § 341 meeting, that sanctions should be awarded against them, or that this matter should be referred to the UST for further investigation.

Further, as the Court stated at the November 10, 2026 hearing, the nature of the Motions, especially the Motion to Compel, has led the Court to consider whether sanctions should be levied not against Debtors, but against Creditor. Under Rule 9011(b)(1), sanctions may be awarded against a party when they file a pleading for an improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase litigation costs." "A party's conduct may be considered harassing when 'it persistently irritates or torments the other party.'. . . To make this determination, the Court may consider a party's 'entire pattern of filings' and litigious conduct throughout the case." *In re Jones*, 632 B.R. 138, 146–47 (Bankr. S.D. Ohio 2021) (citation modified).[6] Additionally, "[a]lthough *pro se* parties may be entitled to some leniency, . . . ultimately *pro se* litigants are not exempted from the duties of Rule 9011, including the obligation to put forth nonfrivolous arguments." *Id.* at 147. Further, "[t]he Court may sua sponte issue sanctions under its inherent powers 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or when the conduct is tantamount to bad faith.'" *Jamar-Mamon v. Univ. of Cincinnati*, 758 F. Supp. 3d 756, 764 (S.D. Ohio 2024).

The parties' litigious history reflects that harassment has been a component of their relationship even before Debtors filed their bankruptcy petition. Given Creditor's aggressive motion practice, the timing of Creditor's Motions, and the breadth and intrusiveness of Creditor's Rule 2004 requests, the Court considered whether Creditor's conduct in this case

[6] Before filing the Motions, Creditor moved for relief from the automatic stay so that he could continue his state court action against "the Kenton County Sheriff's Office and Assistant County Attorney Christopher Nordloh, for their intentional, pre-petition refusal to execute a lawful Writ of Execution" in litigation pending in Kenton (KY) Circuit Court (Case No. 25-CI-00044) that involves Creditor and Debtor Thomas Dennis." [ECF No. 17.] The Court granted the motion to the extent that Creditor could pursue his claim against the non-debtors but clarified that "the Court is not modifying the automatic stay with regard to any effort to seek relief against Debtors, Debtors' property, or property of Debtors' bankruptcy estate." [ECF No. 21.] This is therefore not the first time Creditor has filed a motion that, at least in part, relates to state court litigation in the two months since Debtors filed their petition.

reflects an intent to harass Debtors. At this point, the Court is not prepared to issue sanctions. Nonetheless, Creditor is advised that any future motions or pleadings will be reviewed with this context and these past filings in mind to determine whether Creditor's conduct constitutes harassment and if sanctions should be awarded against him.

Creditor's Rule 2004 Motion [ECF No. 25] and Motion to Compel [ECF No. 26] are DENIED.



---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**

**Signed By:**
***<u>Douglas L Lutz</u>***
**Bankruptcy Judge**
**Dated: Tuesday, November 24, 2026**
**(dll)**